IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MATTHEW GUTIERREZ**,

    Petitioner,

vs.                                        No. **CIV 04-618 MCA/ACT**

**HON. BARBARA J. VIGIL**,
District Court Judge for the
First Judicial District Court of
the State of New Mexico,

    Respondent,

    and

**ANGELINA GUTIERREZ**,

    Real Party in Interest.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the *Motion to Dismiss Petition for Declaratory Relief, Preliminary Injunction, and Permanent Injunction* [Doc. No. 6] filed on behalf of Respondent, the Honorable Barbara J. Vigil, and the *Motion to Dismiss* [Doc. No. 12] filed on behalf of the Real Party in Interest, Angelina Gutierrez. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants these motions and dismisses this action without prejudice for lack of subject-matter jurisdiction.

**I.     BACKGROUND**

On June 3, 2004, Petitioner Matthew Gutierrez (hereinafter "Father") filed a *Petition for Declaratory Relief, Preliminary Injunction, and Permanent Injunction* [Doc. No. 1] in the United States District Court for the District of New Mexico.  Father seeks an order from this Court declaring that the Tribal Court of the Pueblo of Pojoaque (hereinafter "Tribal Court") is the exclusive forum for adjudicating any and all claims regarding the custody and support of his children.  Father also seeks an order from this Court barring Respondent (hereinafter "Judge Vigil") and the Real Party in Interest (hereinafter "Mother") from adjudicating any such claims in the First Judicial District Court of the State of New Mexico (hereinafter "State Court").

Counsel for Judge Vigil and Mother each moved to dismiss Father's petition.  [Doc. No. 6, 12.]  Briefing on the motions to dismiss was completed on October 13, 2004, [Doc. No. 27] after the filing of a surreply.  [Doc. No. 26.]  This action was initially assigned to other United States District Judges and was transferred to me on February 2, 2005.  [Doc. No. 29, 30, 31.]  Based on the admissions in the pleadings, as well as the exhibits, affidavits, and other evidence of record, I make the following factual findings for purposes of determining whether this Court has jurisdiction over this action.

Father and Mother are the parents of two minor children, ages five and six.  Father and both children are enrolled members of the Pueblo of Pojoaque.  Mother describes herself as a citizen of the United States and the State of New Mexico, and she is not an enrolled member of the Pueblo of Pojoaque or any other federally recognized tribe.  Father, Mother,

and the children have resided on and off the lands of the Pueblo at various times. The children have participated in the cultural events of the Pueblo, and they also have participated in religious observances outside the Pueblo as members of Our Lady of Guadalupe Catholic Church. [Ex. 2A to Doc. No. 7; Ex. 2, 3 to Doc. No. 13.] There is a history of domestic abuse in the family, to which the children have been exposed. [Ex. 2B, 2C, 2D to Doc. No. 7.]

Both the Tribal Court and the State Court have conducted proceedings and issued rulings regarding the custody and support of the children at issue here. Mother was residing with the children off the lands of the Pueblo at the time she initiated the state-court proceedings, and Father apparently was in state custody or under house arrest during all or part of this time period, such that the children did not reside with him. [Ex. 2A, 2B, 2C, 2D, to Doc. No. 7.]

On September 26, 2002, the State Court issued an Order of Protection at Mother's request based on a finding that Father had committed an act of domestic abuse. [Ex. 2B to Doc. No. 7.] On October 9, 2002, Mother filed a Petition for the Dissolution of Marriage in the State Court, and on February 11, 2003, the State Court denied Father's motion to dismiss the proceedings in that forum based on lack of jurisdiction. [Ex. 2 to Doc. No. 1; Ex. 2E to Doc. No. 7.] Father challenged this ruling by filing a Petition for a Writ of Superintending Control in the New Mexico Supreme Court, which was denied on April 30, 2003. [Ex. 3 to Doc. No. 7.]

Father also filed a Petition for Dissolution of Marriage in the Tribal Court on October

3

29, 2002.  On February 20, 2004, the Tribal Court denied in part Mother's motion to dismiss the proceedings in that forum with respect to issues of child custody and child support.  [Ex. 3, 4 to Doc. No. 1.]  Mother declined to participate in further Tribal Court proceedings, and by default the Tribal Court issued a Final Decree of Child Custody, Support, and Visitation on April 26, 2004.  [Ex. 5 to Doc. No. 1.]  Nevertheless, the State Court continued to exercise jurisdiction over Mother's petition after that date and denied Father's motion to enforce the Tribal Court's decision.  [Ex. 5 to Doc. No. 13; Ex. A, B to Doc. No. 12.]

## II.  ANALYSIS

As the party invoking federal jurisdiction, Father bears the burden of alleging in his "'pleading the facts essential to show jurisdiction.'"  Penteco Corp. Ltd. P'ship--1985A v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir. 1991) (quoting McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).  Insofar as the motions to dismiss mount a facial attack on Plaintiffs' Petition, the Court accepts the allegations in that pleading as true and simply determines whether they are legally sufficient to establish subject-matter jurisdiction.  See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001).  But insofar as the parties rely on facts outside the pleadings to support their jurisdictional contentions, the Court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."  Holt v. United States, 46 F.3d 1000, 1003 (10th Cir.1995).  In this case, I determine that most (if not all) of the jurisdictional facts are undisputed, and the parties' written submissions provide a sufficient basis for me to rule on whether this Court has subject-matter jurisdiction.

Federal district courts may lack jurisdiction or choose to abstain from reviewing or exerting control over state-court judgments and proceedings on a number of different grounds. See, e.g., 28 U.S.C. § 2283 (precluding federal courts from granting injunctions to stay proceedings in a state court except in certain limited circumstances); Younger v. Harris, 401 U.S. 37 (1971) (declining to enjoin proceedings in state court based on considerations of equity and comity). In this case, I conclude that subject-matter jurisdiction is lacking under the Rooker-Feldman doctrine, which derives from the provision of the United States Code stating that "federal review of state court judgments can be obtained only in the United States Supreme Court." Kiowa Indian Tribe of Okla. v. Hoover, 150 F.3d 1163, 1169 (10th Cir.1998) (citing 28 U.S.C. § 1257 and Dist. of Columbia Ct. of App. v. Feldman, 460 U.S. 462, 476 (1983)).

The Rooker-Feldman doctrine prohibits a lower federal court from considering claims actually decided by a state court, Rooker v. Fid. Trust Co., 263 U.S. 413, 415-16 (1923), and claims "inextricably intertwined" with a prior state-court judgment. Feldman, 460 U.S. at 483 n. 16. Thus, the Rooker-Feldman doctrine precludes "a party losing in state court ... from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994).

In the Tenth Circuit, the Rooker-Feldman doctrine "applies to *all* state-court judgments, including those of intermediate state courts." Kenmen Eng'g v. City of Union, 314 F.3d 468, 473 (10th Cir. 2002) (collecting cases). Under this doctrine, "lower federal

5

courts possess no power whatever to sit in direct review of state court decisions," Feldman, 460 U.S. at 483 n. 16, and "[t]his prohibition extends to all state-court decisions--final or otherwise." Kenmen Eng'g, 314 F.3d at 475.

Father's Petition in this case claims that federal and tribal law provide the Tribal Court with exclusive jurisdiction over the child custody and child support issues and preempt Judge Vigil from exercising jurisdiction over such issues in the State Court. This claim was actually decided by Judge Vigil in the State Court when she denied Father's motion to dismiss Mother's petition and later denied Father's motion to enforce the Tribal Court's decision. [Ex. 5 to Doc. No. 13; Ex. 1A, 1B, 1C, 1E to Doc. No. 7.] This claim also was subject to consideration when the New Mexico Supreme Court denied Father's petition for a writ of superintending control. [Ex. 1, 2, 3 to Doc. No. 7.] Thus, Father's Petition cannot reasonably be construed as a "general constitutional challenge to a state law" that was not actually decided by the state court, or a challenge to "state procedures for enforcement of a judgment, where consideration of the underlying state-court decision is not required." Kenmen Eng'g, 314 F.3d at 476. Rather, the injury alleged by Father in this case "'resulted from the state court judgment itself.'" Id. at 476 (quoting Garry v. Geils, 82 F.3d 1362, 1365 (7th Cir. 1996)).

The fact that Father raises a claim of preemption under the Supremacy Clause in Article VI of the United States Constitution does not exempt this matter from the Rooker-Feldman doctrine. Several federal courts have applied this doctrine and concluded that they lack jurisdiction even when the party invoking federal jurisdiction asserts a claim under the

6

Supremacy Clause or some other important aspect of federal law.  See, e.g., id. at 477 (concluding that federal district court had no jurisdiction to consider preemption claim directed at prior state-court judgment); Blue Cross and Blue Shield of Md., Inc. v. Weiner, 868 F.2d 1550, 1554-56 (11th Cir. 1989) (concluding that federal district court had no jurisdiction to consider a request for declaratory and injunctive relief based on a theory that ERISA preempted a state-court judgment on a plaintiff's tort claims).

Rather than "simply compar[ing] the *issues* involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint," I must "pay close attention to the *relief* sought by the federal-court plaintiff." Kenmen Eng'g, 314 F.3d at 476.  In this case, the relief sought in Father's Petition is to declare the law to be contrary to what Judge Vigil actually decided in the State Court and to enjoin Judge Vigil from adjudicating any claims involving Father's child custody or child support in the State Court proceeding that is currently pending.  A request for such relief indicates the type of "'particularized challenge to an adjudication against him in state court' [that is] clearly barred under *Rooker-Feldman*." Id. at 477 (quoting Ritter v. Ross, 992 F.2d 750, 755 (7th Cir. 1993)).  Thus, unless a specific exception to the Rooker-Feldman doctrine is applicable here, this Court lacks jurisdiction over this action.

In responding to the motions to dismiss, Father does not identify any specific exception to the Rooker-Feldman doctrine that has been recognized by other courts in this context, but he argues that federal jurisdiction is necessary at this juncture in order to protect recognized principles regarding tribal sovereignty.  Accordingly, I next consider whether

there is any basis in the federal common law concerning tribal sovereignty that would override the Rooker-Feldman doctrine and create an exception under which this Court is required to exercise jurisdiction in this case.

The Ninth Circuit has noted that "[t]wo leading treatises on Indian law have assumed that tribal courts would have at least concurrent jurisdiction in divorce cases involving an Indian plaintiff and non-Indian defendant, where the non-Indian defendant resided on the reservation during the marriage."  Sanders v. Robinson, 864 F.2d 630, 632 (9th Cir. 1988) (citing W. Canby, American Indian Law 146 (1981), and F. Cohen, Handbook of Federal Indian Law 342 (1982 ed.)).  Further, where a non-Indian parent has not instituted a separate proceeding in state court and instead elects to file a civil action in federal court claiming that a tribal court exceeded the lawful limits of its jurisdiction in a divorce proceeding, the federal district court generally may rule on that claim because federal district courts have "jurisdiction over the question of tribal court jurisdiction under 28 U.S.C. § 1331" provided that, as a matter of comity, tribal-court remedies have been exhausted first.  See id. at 632 (quoting National Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 853 (1985)); DeMent v. Oglala Sioux Tribal Court, 874 F.2d 510, 513 (8th Cir. 1989) (similar).  Under these authorities, the Rooker-Feldman doctrine does not appear to bar federal district courts from reviewing the limits of a tribal court's exercise of jurisdiction in a divorce proceeding.

The present case is distinguishable, however, because neither party has called upon this Court to decide whether the Tribal Court exceeded the limits of its jurisdiction.  Unlike the non-Indian parent in Sanders, 864 F.2d at 632, Mother has not elected to file a civil

action in federal court to challenge the Tribal Court's jurisdiction. Instead, she filed a separate action in the State Court before the Tribal Court proceedings had commenced.

In addition, Father does not claim to be aggrieved by any ruling of the Tribal Court, and in his briefs he disclaims any intent to assert a cause of action under the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A, or any other statute of general application that provides a set of rules and procedures for determining which of two conflicting child-custody decisions by separate sovereigns is valid. Thus, he does not appeal from, or seek review of, the Tribal Court's exercise of jurisdiction concerning the custody and support of his children. Instead, he challenges the validity of the State Court's exercise of jurisdiction over these matters. This challenge previously has been answered by the State Court, and this Court is barred from reviewing the State Court's ruling under the Rooker-Feldman doctrine.

As another possible basis for exercising jurisdiction, Father alludes to the policies expressed in the Indian Child Welfare Act (ICWA), which generally makes tribal courts the required forum for certain types of Indian child custody proceedings and imposes strict procedures that state courts must follow before they may separate Indian children from their families and tribes in such proceedings. See 25 U.S.C. §§ 1901 to 1963. ICWA specifically applies to situations in which the interests of an Indian parent or tribe are pitted against the interests of a non-parent (*e.g.*, a state agency, foster-care provider, or person seeking adoption) who is not a member of the tribe. See 25 U.S.C. § 1903(1) (defining "child custody proceeding" as "foster care placement," "termination of parental rights," "preadoptive placement," or "adoptive placement").

9

Regardless of whether either parent is or is not a member of a federally recognized tribe, ICWA does not apply to "placement based upon . . . an award, in a divorce proceeding, of custody to one of the parents." Id.; see Comanche Indian Tribe of Okla., 53 F.3d 298, 302 (10th Cir. 1995); Eastern Band of Cherokee Indians v. Larch (In re Larch), 872 F.2d 66, 69 (4th Cir. 1989); DeMent, 874 F.2d at 514.  The child custody and child support determinations at issue in this case arise in the context of a contested divorce proceeding between two parents, each with their own fundamental rights concerning the upbringing of their children. See generally Troxel v. Granville, 530 U.S. 57, 66 (2000) (recognizing "the fundamental right of parents to make decisions concerning the care, custody, and control of their children"). Father has not submitted any authority to support the proposition that Mother lost her fundamental rights as a parent simply because the children were voluntarily enrolled as members of the Pueblo.  Thus, while the general policy concerns expressed in ICWA remain relevant in articulating the respective rights and interests of the family members who are enrolled as members of the Pueblo, these policy concerns do not apply with the same force and effect here because they must be balanced against the rights and interests of Mother, which differ significantly from those of a non-parent such as a state agency or a person seeking to adopt. See id.

Similarly, Father's reliance on Fisher v. District Court, 424 U.S. 382 (1976), is misplaced in this context. Fisher involved the United States Supreme Court's review of the Montana Supreme Court's decision to issue a writ of superintending control allowing a state district court to exercise jurisdiction over an adoption proceeding notwithstanding the fact

10

that the child at issue, his parents, and the persons seeking to adopt the child were all members of the Northern Cheyenne Tribe who resided within the Northern Cheyenne Reservation. There was no occasion to apply the Rooker-Feldman doctrine in Fisher because none of the parties sought review of a state-court decision in the federal district court. Further, there was no occasion to consider the fundamental rights of a non-Indian parent in Fisher because all of the real parties in interest were members of the Northern Cheyenne Tribe, and the persons asserting jurisdiction in state court were not the child's parents.

Thus, while the United States Supreme Court undoubtedly may review the decisions of a state court and determine "whether state action infringed on the right of reservation Indians to make their own laws and by ruled by them," Williams v. Lee, 358 U.S. 217, 220 (1959), that principle does not provide a federal district court with jurisdiction to conduct such a review of state-court decisions under the circumstances presented in this case. Having concluded that the Rooker-Feldman doctrine applies in this case, and that there is no recognized exception to this doctrine which would allow this Court to exercise jurisdiction in this context, I conclude that this action must be dismissed without prejudice for lack of subject-matter jurisdiction.

I recognize that this result may leave the state and tribal courts at an impasse which takes its toll on all concerned. "Conflicting decrees from the tribal court and state court undermine the authority of each sovereign. Unpredictable results produce chaos in the lives of the parents. The discontinuity may cause permanent harm to the child[ren]." Barbara Ann Atwood, Fighting Over Indian Children:  The Uses and Abuses of Jurisdictional

Ambiguity, 36 U.C.L.A. L. Rev. 1051, 1052 (Aug. 1989).  For better or worse, the law currently provides this Court with no role in resolving such an impasse.  It is ultimately up to the parents and the respective state and tribal forums to resolve such matters that bear on the best interests and welfare of the children.

### III.   CONCLUSION

For the foregoing reasons, the motions to dismiss [Doc. No. 6, 12] are granted, and this action is dismissed without prejudice for lack of subject-matter jurisdiction.

**IT IS, THEREFORE, ORDERED** that the *Motion to Dismiss Petition for Declaratory Relief, Preliminary Injunction, and Permanent Injunction* [Doc. No. 6] filed on behalf of Respondent, the Honorable Barbara J. Vigil, is **GRANTED**.

**IT IS FURTHER ORDERED** that the *Motion to Dismiss* [Doc. No. 12] filed on behalf of the Real Party in Interest, Angelina Gutierrez, is **GRANTED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**SO ORDERED** this 11th day of February, 2004, in Albuquerque, New Mexico.

                      **M. CHRISTINA ARMIJO**
                      **UNITED STATES DISTRICT JUDGE**